No. 2022-2047

---

# In the United States Court of Appeals for the Federal Circuit

---

UATP IP, LLC, UATP Management, LLC,

*Plaintiffs-Appellee*,

v.

Kangaroo, LLC,

*Defendant-Appellant*,

Air Entertainment Group, LLC, Hai Chanh Quach, Dan Trinh, Raymond Hung, Edgar Alejandro Guerrero, Alan Trinh, Tina Luu, Golden Star Group, LTD.,

*Defendants*.

---

On Appeal from the United States District Court
for the Southern District of Texas

---

## CORRECTED REPLY BRIEF OF APPELLANT

---

CHAMBERLAIN, HRDLICKA, WHITE
WILLIAMS & AUGHTRY, P.C.

STEVEN J. KNIGHT
DAVID M. MEDINA
AMBER ALI
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 654-9603

October 24, 2023

COUNSEL FOR KANGAROO, LLC

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................ ii

TABLE OF AUTHORITIES ........................................ iii

NOTICE CONCERNING JURISDICTION ........................................ iv

REPLY TO UATP'S COUNTERSTATEMENT OF THE CASE ........................................ 1

ARGUMENT ........................................ 4

I. The district court abused its discretion in granting the preliminary injunction because UATP failed to establish that it is likely to succeed on the merits. ........................................ 4

A. UATP cannot succeed on its patent infringement claim without a claim construction. ........................................ 4

B. UATP failed to establish that it is likely to succeed on its trade dress claim. ........................................ 8

II. The district court abused its discretion in granting the preliminary injunction because UATP failed to establish irreparable harm. ........................................ 13

III. The district court abused its discretion in granting the preliminary injunction because it failed to consider the balance of equities and whether an injunction is in the public interest. ........................................ 18

IV. The district court abused its discretion in failing to require UATP to post a bond. UATP has agreed to pay a substantial bond. ........................................ 20

CONCLUSION ........................................ 21

ADDENDUM ........................................ 23

ADDENDUM A ........................................ 24

CERTIFICATE OF COMPLIANCE ........................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Beatriz Ball, LLC v. Barbagallo Co. LLC*,
40 F.4th 308 (5th Cir. 2022) ....................13

*Chacon v. Granata*,
515 F.2d 922 (5th Cir. 1975) ....................15

*Chamberlain Grp., Inc. v. Lear Corp.*,
516 F.3d 1331 (Fed. Cir. 2008) ....................4

*Expedi, Inc. v. Rebound Int'l, LLC*,
No 4:20-CV-3897, 2021 WL 3702169 (S.D. Tex. May 14, 2021) ....................17

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) ....................4

*Novo Nordisk A/S v. Sanofi-Aventis U.S. LLC*,
290 Fed.Appx. 334 (Fed. Cir. 2008)....................5

*Novo Nordisk of North Am., Inc. v. Genentech, Inc.*,
77 F.3d 1364 (Fed. Cir. 1996) ....................8, 9

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
32 F.3d 1552 (Fed.Cir.1994) ....................4

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)....................11

## Statutes

15 U.S.C. § 1116(a) ....................14

## Other Authorities

FED. R. CIV. P. 65(c)....................*passim*

## NOTICE CONCERNING JURISDICTION

On December 19, 2022, the district court ordered: "The case is dismissed *with prejudice*." Docket No. 125 (emphasis added). The order also stated: "By March 24, 2023, the parties may move for reinstatement." Docket No. 125. On March 20, 2022, this Court entered an order staying the appeal and requesting Kangaroo to advise how the appeal should proceed. Docket No. 32. On April 10, 2023, Kangaroo asked the Court to lift stay because UATP moved to reinstate the case in the district court on March 9, 2023. Docket No. 34. On May 31, 2023, the Court entered an order maintaining the stay and directing the parties to notify how the appeal should proceed within fourteen days of the district court's ruling on UATP's motion to reinstate. Docket No. 36. On June 20, 2023, Kangaroo filed its response to the Court's May 31, 2023 order and asked the Court to lift the stay because the district court reinstated the case on June 6, 2023. On July 25, 2023, the Court lifted the stay. Docket No. 39. On August 24, 2023, UATP filed its brief. Kangaroo's reply brief is due on October 16, 2023.

Before reaching Kangaroo's reply arguments, Kangaroo raises a jurisdictional issue that has been raised in the district court by Kangaroo's trial counsel. The jurisdictional issue also impacts this appeal. Specifically, Kangaroo's trial counsel has now filed a motion to dismiss the lawsuit for want of subject matter jurisdiction because the December 19, 2022 order dismissed the lawsuit "with prejudice"—a

decision on the merits. Docket Nos. 131, 135, 136, 137 & 138. UATP did not file a motion for relief from that order within twenty-eight days. By the time the district court reinstated the case on June 6, 2023, the court's subject matter jurisdiction had long expired.

Kangaroos' motion to dismiss for lack of subject matter jurisdiction remains pending in the district court. Kangaroo suspects that the court's ruling will be appealed to the United States Court of Appeals for the Fifth Circuit. As such, Kangaroo respectfully amends or supplements its responses to the Court's orders dated March 20, 2023, and May 31, 2023, to advise the Court about the jurisdictional issue and to request the Court to reinstate the stay to allow the jurisdictional issue to be fully adjudicated. If the court that finally decides the jurisdictional issue agrees with Kangaroo, this appeal will be moot. Subject to this stay request and out of an abundance of caution, Kangaroo submits this reply brief.

## REPLY TO UATP'S COUNTERSTATEMENT OF THE CASE

UATP's Brief misrepresents or slants certain facts to this Court that, if relied upon, can have a profound impact on this Court's ruling. For instance, UATP represents that Kangaroo is related to AEG, the prior owner of the facility. UATP's Brief pp. 6 and 31. UATP is suggesting Kangaroo conspired to defraud UATP. To support this claim, UATP cites to only its own pleadings. UATP attempts to paint Kangaroo as an intentional wrongdoer that acted with malice, but that is far from the truth. There is not a single piece of evidence in the record to support the contention that Kangaroo is in fact related to AEG.

What is worse is that the district court failed to do its own independent analysis on this issue and accepted what UATP conjured up as true. This is reflected in the district court's injunction order where the court wrongfully concludes: "Urban Air terminated the franchise when Air Entertainment Group did not pay the fee required under the license. The same owners of the Group created Kangaroo and leased the premises to operate a similar indoor trampoline park." Appx003. The wrongdoings of a separate, unrelated party, have been projected onto Kangaroo. Misrepresentations like this can taint the neutrality of the court and affect its discretion. The grave impact of this misrepresentation was also observed during the preliminary injunction hearing.

> THE COURT: Yeah, but wait a minute. Your capital base was using somebody else's equipment without --
>
> MR. RIEBSCHLAGER: It is no longer their equipment. They don't own it.
>
> THE COURT: You don't have standing – your people don't have standing to say they don't own it. They signed papers saying they recognized that y'all own it, and if you -- all that stuff.
>
> MR. RIEBSCHLAGER: We didn't sign anything.
>
> THE COURT: Well, then, you're just rank trespassers. That simplifies that.
>
> MR. RIEBSCHLAGER: No, we didn't sign anything with Urban Air. Other parties did. And we're simply a lessor that has made changes to address their --
>
> THE COURT: Well, you just fall in line behind the rest of them then.
>
> MR. RIEBSCHLAGER: Okay.
>
> THE COURT: The fact that you didn't sign something, you know, out in the country, there's lots of unoccupied land, but you try just spending the night on it, you will find out just how occupied that land is. Not only will the cows lick you and you can't sleep, but when the farmer hears the uproar, he will be there with both barrels.

Appx185-186. The court's own statements on the record suggest the court did not fully appreciate the facts of this case. Due to UATP's misrepresentations, the district court could only see Kangaroo as a wrongdoer. The discretion used thereafter in granting the injunction was abused.

Further, UATP contends Kangaroo began operating an indoor trampoline park "identical to its predecessor, Urban Air. UATP subsequently sought and was granted… a preliminary injunction." (internal citations omitted) UATP's Brief p. 4. This suggests that at the time of the preliminary injunction hearing, Kangaroo looked

identical to a UATP facility. This is not true. Kangaroo presented evidence at the injunction hearing that it had already made substantial changes to its park. Appx113-117. Specifically, Kangaroo's representative, Mr. Stanley Tang, testified Kangaroo built walls between the ropes course, zip-line, and soft playground so that The Adventure Hub no longer exists. Appx116.

Kangaroo also built a stairway entrance to the ropes course to completely separate it from the other attractions. *Id.* Mr. Tang also testified Kangaroo has "added significant custom artwork, painting, own color scheme to the Kangaroo facility, among many more as well." Appx117. To support the veracity of Mr. Tang's oral testimony, Kangaroo submitted a sworn affidavit by Mr. Tang listing out all the ways in which Kangaroo modified its park *prior* to the injunction hearing. Appx836.

Kangaroo believes this misrepresentation also impacted the court's discretion, as the court ignored Mr. Tang's testimony on how Kangaroo eliminated the patented feature of The Adventure Hub.

These are just a few of the many inconsistencies and misrepresentations made by UATP that have had actual consequences in the district court's ruling.

## ARGUMENT

### I. The district court abused its discretion in granting the preliminary injunction because UATP failed to establish that it is likely to succeed on the merits.

UATP, the movant of the preliminary injunction, bears the burden to prove entitlement to relief. *Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1555 (Fed.Cir.1994) UATP failed to establish it is likely to succeed on the merits. Therefore, the court abused its discretion in granting the preliminary injunction.

#### A. UATP cannot succeed on its patent infringement claim without a claim construction.

This Court once held that the likelihood of success of a patent "depends fundamentally on the meaning of the asserted claim and its relationship to the accused product. Therefore, a correct claim construction is almost always a prerequisite for imposition of a preliminary injunction." *Chamberlain Grp., Inc. v. Lear Corp*., 516 F.3d 1331, 1339-40 (Fed. Cir. 2008). UATP looks at this quote with a very narrow focus on the word "almost" in order to defend its failure to seek a claim construction. UATP's Brief p. 14. However, UATP fails to provide any authority laying out any exceptions to the requirement of a claim construction in a patent infringement claim. Instead, UATP tries to force itself into this undefined "almost" bucket as a free for all. But, it is well established that a claim construction is the first step in prosecuting a patent infringement claim. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970-71 (Fed. Cir. 1995).

In one case, this Court previously held that a claim construction was not required for a preliminary injunction ruling. *Novo Nordisk A/S v. Sanofi-Aventis U.S. LLC*, 290 Fed.Appx. 334 (Fed. Cir. 2008). However, in that case, the lower court *denied* the request for preliminary injunction. *Id.* This Court held that the *denial* of the injunction was proper even though a claim construction had not been performed because the district court determined the patent had issues with validity, and thus, was not likely to succeed on the merits. *Id.* This reasoning does not apply to the case at bar since the district court here *granted* the injunction. Thus, the district court should have conducted a proper claim construction prior to determining UATP is likely to succeed on the merits.

UATP also cites *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, to support its argument that a claim construction is not required when seeking a preliminary injunction. 74 F.3d 1216, 1220 (Fed. Cir. 1996). UATP's Brief p. 14-15. In that case, this Court held that the "likelihood of success on infringement [] depends on the meaning of disputed claim terms supplied by the court." This Court added: "the trial court has no obligation to interpret claim 1 *conclusively* and *finally* during a preliminary injunction proceeding." (emphasis added). *Id.* A string cite of cases explain that the district court's claim construction for a preliminary injunction is not *binding* or *final* because "decisions on preliminary relief do not preclude trial on the merits." *Id.* (*citing Black & Decker, Inc. v. Hoover Serv. Ctr.*, 886 F.2d 1285, 1296

n. 16 (Fed.Cir.1989). Basically, the Court held that a claim construction is required to determine the likelihood of success during a preliminary injunction hearing, but that the construction can change during a trial on the merits. Thus, the district court still must conduct a claim construction prior to granting a preliminary injunction. Because a claim construction was warranted but not completed here, the court made a clear error in holding that UATP was likely to succeed on its claims.

Yet, UATP argues that a claim construction is not needed because Kangaroo is aware of what equipment the patent includes. UATP is confusing the issues on appeal here. It is undisputed that "The Adventure Hub" is the equipment at issue in this lawsuit. It is also correct that Kangaroo believes it is not in violation of the "The Adventure Hub" and UATP believes it is. But, given Kangaroo's dismantling of the key feature of The Adventure Hub, it is unclear why UATP is still claiming infringement.

UATP's own witness at the hearing testified that "The Adventure Hub" includes a Soft Playground, which is different from what is mentioned in the patent. Despite this material discrepancy, UATP, through its pleadings and its witness' testimony, has emphasized that the patented characteristic of the The Adventure Hub is the combination of the three equipment, creating "one continuous 'hub' of activity." Appx463. In fact, UATP's own witness testified that the zip-line, ropes course, and soft playground are not unique in and of themselves, comparing the soft

playground to one at a McDonald's restaurant. Appx73.

Based on UATP's pleadings and testimony, it appears that the continuous hub of the equipment is the patented characteristic. Kangaroo's witness clearly and concisely swore under oath that the zip-line, ropes course, and soft playground at the Kangaroo facility are not connected to one another—they are completely walled off. Appx115-16. Thus, there is no continuous hub of activity. Logically then, The Adventure Hub does not exist on the Kangaroo premises. If it does not exist on the premises, then there is no infringement, and UATP's claim disappears. However, UATP still disputes that The Adventure Hub does not exist at Kangaroo. Further, its own witness contradicted UATP's patent. These contradictions within UATP confirm the patent is ambiguous and confusing and requires a claim construction.

UATP also argues that Kangaroo has waived a claim construction because it is raising the issue for the first time on appeal. UATP's Brief p. 17. This is not true. Kangaroo filed a Response to Plaintiffs' Memorandum of Law Pertinent to the Request for Preliminary Injunction in the district court. Appx702-711. In Kangaroo's response, it complained of UATP's standing to sue on the patent and argued:

> The current patent contains 'new matters' which this court has stated will be the subject of evidentiary issues at trial (Doc. 49). The likelihood of success on those issues are suspect and requires further inquiry before a ruling of successful outcome is predictive.

This was sufficient to raise concern over the construction of the patent. Moreover, it was UATP's burden to prove likelihood of success and by failing to seek a claim construction, UATP failed to meet its burden of proof.

UATP further argues it is within the district court's purview to weigh Kangaroo's testimony and assess the credibility of its witness. UATP's Brief p. 18. However, "an abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Novo Nordisk of North Am., Inc. v. Genentech, Inc.,* 77 F.3d 1364, 1367 (Fed. Cir. 1996). Thus, Kangaroo stands by its argument that the court made a clear error of judgment in weighing the testimony of Kangaroo's witness regarding the non-existence of The Adventure Hub on its premises. The court abused its discretion by holding that UATP is likely to succeed on the merits. The injunction must be reversed.

**B. UATP failed to establish that it is likely to succeed on its trade dress claim.**

UATP relies on its Trade Dress Manual in support of its trade dress claims. Appx749-770 and 774. However, similar to UATP's failure to state its trade dress claim with specificity in its First Amended Complaint, UATP also failed to detail its trade dress in its own Trade Dress Manual[1]. *Id.* The Manual is silent on many of the

[1] UATP's live pleading at the time of the injunction hearing failed to plead its trade dress claim with specificity. On May 24, 2022, the district court granted Kangaroo's Motion for a More

injunction's grounds for enjoinment. Specifically, there is no mention of the colors orange or yellow anywhere in the Manual—not even on UATP's reference list of colors. *Id.* Yet, the court has enjoined Kangaroo from using orange and yellow. The court made a factual error in enjoining Kangaroo from using orange and yellow, when those colors are not protected.

UATP declares its trade dress requires its franchisees to incorporate "color schemes comprised of orange, yellow, Urban Air Lime Green, and Cosmic Dust Blue." UATP's Brief p. 5. However, UATP's own pleadings are inconsistent as to which colors are incorporated in the so-called color scheme. Plaintiff's Second Amended Complaint, which was filed on June 2, 2022, only lists "orange, black, and blue" as part of the color scheme. Appx481. Plaintiff's Memorandum supporting its request for injunction, which was filed on June 9, 2022, lists "neon orange, yellow, Urban Air Lime Green, and Cosmic Dust Blue" as the color scheme of UATP. It is interesting to note how orange was changed to neon orange and blue to Cosmic Dust Blue and black was completely removed from Plaintiff's pleadings within the span of one week. Further, UATP's own witness listed only "orange and black, without question" as the primary colors for the trampoline parks. Appx86.

---

Definitive Statement, and UATP was allowed to amend its complaint to plead its trade dress claim with specificity to prevent claim dismissal. On June 24, 2022, the district court held the preliminary injunction hearing. The preliminary injunction order was signed on June 28, 2022. Appx003. The court did not accept UATP's Second Amended Complaint with the revised trade dress claims until July 14, 2022, *after* the injunction order was signed. Thus, it was clear error for the court to hold that UATP was likely to succeed on its trade dress claim at the time.

It has never been clear which colors comprise UATP's trade dress—not even to UATP. Mr. Tang testified at the hearing that after the filing of the lawsuit, Kangaroo made significant efforts to obtain UATP's trade dress. Appx114. However, UATP did not provide any clarification or guidance. *Id.*

Further, UATP argues that its amended trade dress infringement claim is only seeking to protect non-functional aspects of the trampoline park. However, the injunction order states: "Urban Air also claims Kangaroo infringed on its trade dress rights by using its signature colors, graphics, *play equipment* and layout, and signs." (emphasis added) Appx002. The order does not specify the use of which equipment is in violation of Urban Air's trade dress. The use of park equipment generally is functional for a trampoline park. Without the use of park equipment, a trampoline park could not function.

Next, UATP argues that in order to show likelihood of success, it only needs to show inherent distinctiveness, not secondary meaning. UATP's Brief p. 23. This is incorrect. The Supreme Court has held that in an action on *unregistered* trade dress, a product design can only be distinctive and protectable on a showing of secondary meaning. *Wal-Mart Stores, Inc. Samara Bros.*, 529 U.S. 205, 205 (2000). Additionally, "color [] is not inherently distinctive." *Wal-Mart Stores, Inc. Samara Bros.,* 529 U.S. 205, 212 (2000). "Indeed, with respect to at least one category of mark—colors—we have held that no mark can ever be inherently distinctive." *Id.* at

211. If a trade dress is not inherently distinctive, then it must show secondary meaning to establish acquired distinctiveness. *Id.* at 210-211.

Here, because UATP's trade dress is unregistered, it must show secondary meaning. UATP also argues that to determine the distinctiveness of a trade dress, courts look at a combination of features, not just a single feature (like color). UATP's Brief p. 24. However, UATP's claim for trade dress infringement focuses on the alleged violation of its color scheme—the remaining issues cited by UATP are either not detailed or complain of functional features. Appx614.

For instance, UATP lists the layout of its park as a trade dress feature, yet, it fails to state what UATP's layout is and how Kangaroo is copying the same. *Id.* UATP also states that the redundancy of trampolines, attachment of safety harnesses, and tracking of the zip-line are part of its trade dress. *Id.* However, those are functional items. Kangaroo is a trampoline park. Thus, redundancy of trampolines is inherent in the purpose of the facility—it is a functional feature.

Further, safety harnesses and tracking of a zip-line are also functional features to which a trade dress cannot be claimed. It is clear that UATP's trampoline parks are not different and distinct from other trampoline parks—they are inherently generic, and at most, merely descriptive, under the Supreme Court's breakdown of trade dress classifications. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

With the elimination of the other alleged trade dress features, UATP is only left to argue its colors as part of its trade dress. However, because colors are not inherently distinctive, UATP must show its trade dress has secondary meaning. That is why an analysis of secondary meaning is required.

Of the seven factors that must be considered in determining secondary meaning, UATP did not satisfy at least three. First, by its own admission, UATP failed to obtain consumer surveys. UATP's Brief p. 25. Second, UATP failed to provide direct consumer testimony. UATP has provided screenshots of Facebook comments from sources that are not validated—the comments could have been generated by false profiles. There is too much room for speculation for them to be considered "direct consumer testimony." Appx655-658. Third, Kangaroo had no intent to imitate UATP's trade dress. Mr. Tang testified at the hearing:

> "Kangaroo does not want to be Urban Air. We have spent in good faith significant effort in making changes, significant effort in reaching out to the other party to ask for clarification on their trade dress… And we have no received any clarification and guidance…"

Appx114.

UATP further argues there is a likelihood of confusion and asks this Court to ignore the district court's clear statement that "Questions by customers about the new trampoline park that suggest similarities… do not necessarily imply confusion." Appx003. UATP alleges "the court's statement… relates to a single piece of

evidence—a screenshot of an individual asking whether Kangaroo will have a zip line…" UATP's Brief pp. 27-28. This is untrue. The district court had in its possession various screenshots of social media postings—they were attached to UATP's Memorandum supporting its preliminary injunction request. Appx655-658. Further, the court uses "questions" and "customers" in plural form, suggesting there is not just one question and there is not just one "customer." The district court weighed the evidence to conclude there is no confusion.

Still, UATP argues that, although the court held no confusion exists, there are similarities that could harm UATP. Appx003. Even if true, that is not the standard to prove a trade dress infringement claim. To prevail on a trade dress claim, the movant must prove that "the trade dress has been infringed by demonstrating a likelihood of confusion in the minds of the potential consumers." *Beatriz Ball, LLC v. Barbagallo Co. LLC,* 40 F.4th 308, 318 (5th Cir. 2022).

Even UATP admitted in its brief that a showing of actual confusion is the best evidence of likelihood of confusion. UATP's Brief p. 29 (citation omitted). Because the district court clearly held no confusion exists, UATP is unable to establish this critical element to prove its trade dress infringement claim.

## II. The district court abused its discretion in granting the preliminary injunction because UATP failed to establish irreparable harm.

The district court's determination of likelihood of success of UATP's claims was incorrect, as explained earlier in this brief. Thus, UATP is not entitled to a

rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a). UATP's brief argues, "When, as here, a likelihood of confusion exists, a mark owner's lack of control over the quality of the infringer's goods or services constitutes an immediate and irreparable injury." (citation omitted). UATP's Brief p. 33. UATP is likely referring to statements and questions posted by certain individuals on Kangaroo's social media. Appx655-658.

One comment by an Izzy Wolf states, "The former Urban Air place?" Appx655. This suggests Wolf is able to distinguish between UATP and Kangaroo because she is aware Urban Air formerly operated at the facility, but no longer does so now. A Cindy Martinez posted a question asking "how much the membership? Also, will you have them available monthly payments like with Urban Air?" Appx657. Martinez is admitting here that Kangaroo is different from UATP and is distinguishing the two. An Amada Lopez also posted a question, "Is this where urban air was?" Appx658. Clearly, Lopez is not confused about whether Kangaroo is UATP because she admits this is where UATP was (past tense), not is now.

Further, no UATP location exists in Laredo. Appx115. Upon information and belief, the closest UATP location to Kangaroo is in San Antonio, Texas, which is more than 150 miles away. *Id.* There is no likelihood of confusion or competition between the two trampoline parks.

UATP's contention that "the public is left with a false impression that

Kangaroo is either connected to or affiliated with UATP's business when it is not" cites to no source. UATP's Brief p. 33. UATP does not present any other evidence, besides Kangaroo's social media posts, in support of the unsubstantiated conclusion that a likelihood of confusion exists in UATP's customer base. Further, the district court held that those questions posted on social media "do not necessarily imply confusion." Appx003. Thus, UATP is not entitled to a presumption of irreparable harm and had the burden to prove this element.

"An injunction is appropriate only if the anticipated injury is imminent and irreparable." *Chacon v. Granata*, 515 F.2d 922, 926 (5th Cir. 1975). Any alleged injury to UATP is not imminent. In fact, even the district court does not believe any harm is imminent. On July 13, 2022, UATP filed its Motion for Contempt and for Sanctions against Kangaroo, LLC to enforce the preliminary injunction. Appx787. On July 14th, the district court ordered that UATP's motion is stayed pending appeal. Appx823. The court had the opportunity to grant UATP's motion and enforce the injunction, but it rightfully determined not to, suggesting the court does not believe UATP will suffer irreparable harm with the delay of an appeal. Thus, the district court abused its discretion by granting the preliminary injunction even when it did not believe any harm to UATP would be irreparable.

Further, even UATP does not believe its alleged harm is irreparable. After the district court ordered a stay of the enforcement of the injunction, UATP had the

opportunity to request the court to reconsider, but it did not seek any such remedy. Then, Kangaroo filed its brief in this Court challenging the preliminary injunction on September 27, 2022. Doc. 25. UATP requested an extension to file its brief, which was granted. But, UATP still failed to file its brief by the new deadline of December 15, 2022. Even after this Court provided a notice of UATP's failure to timely file its brief on January 10, 2023 and advised it would make a decision solely on Kangaroo's brief, UATP still did not submit its responsive brief until August 24, 2023. Doc. 28. UATP waited eleven months from the date of Kangaroo's opening brief to file its own, confirming UATP is in no rush to resolve this matter. UATP is not suffering any irreparable harm.

UATP also waited eleven months in pursuing its preliminary injunction from the date it discovered the alleged violations in July 2021. Appx466. UATP's brief argues it had a good explanation to wait this long, citing delays in obtaining discovery from Kangaroo. UATP's Brief p. 36. However, the record is devoid of any actions taken by UATP to pursue and compel discovery. UATP has also failed to explain why the ownership of equipment—information that UATP was allegedly attempting to discover—affected the pursuit of preliminary injunction. The injunction was sought only against Kangaroo as the lessee and operator of the facility. UATP needed no additional information from what it already had in July 2021 to move forward with its preliminary injunction.

"[T]he concept of 'irreparable harm' includes that the harm is imminent, and therefore must be remedied faster than a trial on the merits would allow." *Expedi, Inc. v. Rebound Int'l, LLC*, No 4:20-CV-3897, 2021 WL 3702169 (S.D. Tex. May 14, 2021). Due to the delays caused by UATP, a trial on the merits would have yielded a quicker result than the preliminary injunction. The district court originally set this case for trial on August 30, 2022. The trial was then reset to October 4, 2022, its second trial setting. The second trial setting was passed due to the appeal in this Court.

This appeal could have been completed by the end of last year or beginning of this year had UATP diligently prosecuted its claims. The lack of diligence by UATP suggests no irreparable harm has been done. The district court abused its discretion by holding that UATP suffered irreparable harm when overwhelming evidence suggests the harm was not imminent at all. Without imminence, harm is not irreparable. Thus, the district court failed to apply the law correctly; UATP's extreme delay disqualifies it from obtaining the extraordinary remedy of a preliminary injunction.

If UATP prevails at trial, money damages can compensate UATP for any alleged harm. The district court acknowledged as much at the hearing. Appx178 ("money damages might be adequate."). Even UATP admits in its brief that competitive harms can be offset by monetary payments if UATP is able to collect

on a judgment against Kangaroo. UATP's Brief p. 37. UATP then speculates on Kangaroo's ability to pay a judgment. *Id.* On the one hand, UATP represented to the district court that Kangaroo is benefitting from its likeness to UATP and is likely generating a revenue of approximately $35,000 a month. Appx103. On the other hand, UATP argues Kangaroo does not have sufficient funds to pay a judgment. UATP incorrectly summarizes the first page of Kangaroo's opening brief to support its point. UATP's Brief p. 37.

UATP states: "Kangaroo has repeatedly implied it could not afford to pay any judgment for damages entered against it…" *Id.* However, Kangaroo's brief does not state it could not afford a final judgment. Kangaroo has only stated it could not afford strict compliance with the preliminary injunction, as strict compliance would require substantial demolition and construction of the new facility and purchase and installation of new equipment. Appx839. Here, because any harm is not imminent and can be compensated monetarily, a preliminary injunction is improper.

## III. The district court abused its discretion in granting the preliminary injunction because it failed to consider the balance of equities and whether an injunction is in the public interest.

The district court was required to "state the reasons why it issued" the preliminary injunction. Rule 65(d)(1)(A). The injunction order includes sections for the likelihood of success and the irreparable harm elements, but no other elements required for a preliminary injunction. Appx003. While the order states "It will

balance the harm to protect Urban Air interests before an expedited trial," the order does not state how it is so doing. Agreeing to not shutter Kangaroo's business does not meet the requirements of Rule 65(d).

The court did not explain at all the reasons why it believed the harm to UATP would be greater than Kangaroo if the injunction is denied. Did the court consider that all the colors listed in the injunction order are not in fact listed in the Trade Dress Manual? Did the court consider that the colors it was prohibiting make up half of the rainbow and preventing their use at a children's play facility could be detrimental in appealing to Kangaroo's family base?

Did the court consider that a lot of the equipment at Kangaroo's facility is installed into the ground and/or connected to the roof of the structure, making them fixtures of the facility? Did the court consider that in many instances the enjoined colors are stitched onto immovable fixtures? Did the court consider how costly it would be to remove every trace of each of the colors mentioned in the injunction order? Did the court consider what it would cost Kangaroo for the demolition, construction, renovation, and purchase and installation of new equipment to strictly comply with the injunction?

Further, did the court understand that the "Adventure Hub" was patented specifically for its "continuous 'hub' of activity" between the zip-line, ropes course, and soft playground, as stated in UATP's Second Amended Complaint? Appx463.

And, did the Court consider Kangaroo's testimony at the hearing when it testified that the Adventure Hub no longer exists because the very characteristic that patented the innovation, the "one continuous 'hub' of activity" did not exist at the facility at the time of the hearing?

Had the district court truly considered the evidence provided by Kangaroo at the hearing and balanced the harm to both parties, these questions would have been answered in a reasoned order, as required by Rule 65(d)(1)(A). Because the court did not balance the harm, Kangaroo may have to shutter its business to strictly comply with the order.

Moreover, the court did not state how the granting of the injunction is in the public's interest. *Id.* The district court abused its discretion for failing to balance the harm to the parties and consider the public's interest. The court also erred in failing to make findings of fact and providing reasons to support the granting of the injunction, under Rule 65(d)(1)(A).

**IV. The district court abused its discretion in failing to require UATP to post a bond. UATP has agreed to pay a substantial bond.**

A court is required to seek the posting of a bond, at an amount it deems proper, when it orders a preliminary injunction. FRAP 65(c). The purpose of a bond is to protect defendants from losses in the event the injunction is dissolved and damages are assessed against the plaintiff. *Id.* Here, on the first page of the order, the district court lists out the requirements of an injunction, but fails to list the requirement of a

bond. This was clear legal error. In fact, the preliminary injunction does not use the word “bond” even once in its order.

UATP argues the district court has the discretion to set the amount of the bond, and therefore, can require no bond at all. However, under Rule 65(d)(1)(B), an order granting an injunction is required to “state its terms specifically.” If the district court did not want to require a bond, it should have stated so specifically. But, it did not. The absence of the word “bond” from the entirety of the order suggests the court never considered the requirement of the bond at all, which is clear error and amounts to an abuse of discretion.

Further, at the preliminary injunction hearing, UATP’s witness admitted that if the injunction is granted, Kangaroo may suffer “approximately $35,000 a month. So we believe that would be a reasonable basis for this Court to identify what a bond should be in the event it granted a preliminary injunction…” Appx103. Counsel for UATP then represented to the court that UATP was “willing to post a substantial bond, [$]50,000, $100,000 to – during the interim if the injunction is granted.” Appx182.

## CONCLUSION

The district court has not ruled on Kangaroo’s Motion to Modify In Part or Alternatively Stay In Part the Preliminary Injunction—it has only stayed UATP’s efforts to enforce the injunction. Therefore, Kangaroo has undertaken costly changes

to its facility to comply with the injunction. Kangaroo requests this Court to reverse the injunction. However, if this Court will affirm the injunction, Kangaroo will likely need to shutter its business to fully and literally comply with the injunction. For this reason, Kangaroo requests this Court to remand the matter on the issue of the bond and direct the district court to require the posting of a bond in the amount of $100,000/month, as agreed to by UATP, for every month Kangaroo is shut down. Kangaroo further requests the posting of a retroactive bond in a lesser amount for the substantial costs already paid to comply with the injunction since its issuance.

Kangaroo, LLC requests the Court for any additional relief to which it is entitled at law or in equity.

Dated: October 24, 2023

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY

By: *__/s/ Steven J. Knight__________*
STEVEN J. KNIGHT
DAVID M. MEDINA
AMBER ALI
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 654-9603

# ADDENDUM

| Addendum | Description | Filing Date | Pages |
|---|---|---|---|
| A. | Certificate of Compliance | 10/24/23 | 24 (of Brief) |

## ADDENDUM A

## CERTIFICATE OF COMPLIANCE

I, Steven J. Knight, hereby certify that the foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 5,681 words.

Dated: October 24, 2023

By: */s/ Steven J. Knight*
STEVEN J. KNIGHT
CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 654-9603

31152126.v1